UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA
Civil Division

| | |
|---|---|
| NEONU JEWELL )<br>275 Freshet Lane )<br>Laurel MD 20724 )<br>           )<br>           *Plaintiff,*    ) | Jury Trial Demand |
|           )<br>    v.     )<br>           ) | |
| DEV JAGADESAN, ACTING CHIEF )<br>CHIEF EXECUTIVE OFFICER )<br>U.S. DEVELOPMENT FINANCE )<br>CORPORATION )<br>1100 New York Avenue, NW )<br>Washington, DC 20527 )<br>           )<br>           *Defendant.*    ) | |

## COMPLAINT

Comes now Plaintiff Neonu Jewell (hereinafter "Plaintiff Jewell", "Plaintiff", or " or Ms. Jewell"), by and through her attorneys, and hereby files this Complaint against Dev Jagadesan, the Acting Chief Executive Officer of the U.S. Development Finance Corporation, ("Defendant DFC" or "DFC"). Plaintiff seeks relief pursuant to First and Fifth Amendments to the U.S. Constitution and including but not limited to declaratory, injunctive and other equitable relief, compensatory damages, litigation expenses and reasonable attorneys' fees, based on Defendant's discriminatory, harassing, retaliatory, and otherwise unlawful actions against Plaintiff Jewell.

1

## JURISDICTION AND VENUE

1. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 as the matter arises under the First and Fifth Amendments to the U.S. Constitution and the Administrative Procedure Act, 5 U.S.C. § 551 et seq.

2. Venue is proper in this Court in that the events and omissions giving rise to Plaintiff's claims occurred here in the District of Columbia and Defendant may be found here.

## PARTIES

3. Plaintiff Jewell is an African American female and a resident of the State of Maryland.

4. Defendant Dev Jagadesan is the Acting Chief Executive Officer of DFC, a federal agency of the United States government.

## FACTS

5. Plaintiff Jewell commenced employment with DFC in December 2022 as Chief Diversity and Inclusion Officer (CDIO) after being recruited to apply for the position and an arduous interview process with four rounds of interviews. She is a seasoned human resources professional with over twenty years of experience and holds a Juris Doctorate degree and is a licensed attorney.

6. Shortly after Plaintiff Jewell began employment with DFC, the sole EEO Officer, Ebony Jarrett, resigned from her position, and Patrick Browne, the OHRM, asked Ms. Jewell to take over the EEO duties with a detailee from his team. Ms. Jewell accepted the EEO Director role and became the DFC's EEO Director and CDIO with support from the CEO, the Office of Human Resource Management (OHRM), the Office of the General Counsel (OGC), the Chief of Staff (Office of the Chief Executive (OCE)) and Finance. Her position description stated that she reported

2

directly to the Chief Executive Officer (CEO) and served as principal advisor to the OCE on DFC's Equal Employment Opportunity (EEO); Diversity, Equity, Inclusion and Accessibility (DEIA); Justice, Equity, Diversity, and Inclusion (JEDI) Programs, and government-wide policy to advance equity across the federal government.

7. Plaintiff Jewell's office worked primarily on EEO work and DEI, including special emphasis programs, ERG support, policy reviews and recommendations. Her position was an Administratively Determined (AD) position and could only be removed by DFC's CEO.

8. Plaintiff Jewell supervised a staff of four individuals, including two deputies and three staff members who performed EEO work as members the Office of Equal Opportunity, Diversity, and Inclusion (OEDI), which Plaintiff Jewell created. She was highly effective in her role, and she and her team played a critical role in ensuring that DFC complied with its EEO obligations and the DEI directives. Plaintiff Jewell and her staff were praised for their efficiency and professionalism. In April and September 2024, Ms. Jewell asked the DFC front office to change her department's name to reflect its primary EEO duties. No action was taken on her requests.

9. In November 2024, Plaintiff Jewell received a statement of personal benefits which notified her that she was eligible to receive severance pay of $219,793.60 if she received a formal reduction in force notice.

10. In January 2025, DFC's CEO, pursuant to the change in administration, abruptly resigned from his position and DFC was left without a CEO.

11. On January 20, 2025, Donald J. Trump was inaugurated as President of the United States. Later that evening, President Trump signed several Executive Orders, including one entitled *Ending Radical and Wasteful Government DEI Programs and Preferencing and Initial Recissions of Harmful Executive Orders and Actions*, which repealed Executive Order 14035, *Diversity, Equity,*

*Inclusion and Accessibility in the Federal Workforce*. The following day, January 21, 2025, Charles Ezell, the Acting Director, U.S. Office of Personnel Management (OPM), issued a Memorandum to the Heads and Acting Heads of U.S. Government Departments and Agencies, and stated that federal agencies were directed to take prompt actions regarding the offices and agency sub-units focusing exclusively on DEIA initiatives and programs, including sending agency-wide notices to employees informing them of the closure and sending notifications to all employees of DEIA offices that they are being placed on paid administrative leave immediately as the agency takes steps to close and end all DEIA initiatives, offices and programs.

12. On January 21, 2025, Plaintiff Jewell attended DFC's weekly Vice President's meeting, where the attendees were introduced to Mr. David Glaccum, the liaison from the White House with the title of Chief Investment Officer (Interim). During this meeting, senior DFC officials, Peter Saba (Office of General Counsel), Frank Esquivel (Senior Vice President Operations), Jamesa Hunter (Chief Human Capital Officer), and Mateo Goldman (Senior Vice President Investments) explained that per President Trump's Executive Orders, the agency did not have an interim CEO, Deputy CEO, or General Counsel. The Vice-President of the Office of Health and Agriculture, James C. Polan, inquired, "So, we have no boss?" And there was no response. Each Vice President introduced themselves and Ms. Jewell introduced herself as the EEO Director.

13. After the January 21, 2025, OPM "Initial Guidance Regarding DEIA Executive Orders" was released, DFC ordered the OEDI internal intranet site to have only EEO content. DFC, instead, shut down its external sites with DEIA and EEO information instead of solely removing the DEIA content provided by Ms. Jewell.

14. Earlier in the day, Ms. Jewell sent an email to the deputy general counsel, Peter Saba (OGC), Frank Esquivel (OCE, SVP Operations), Jamesa Hunter (OHRM, Chief Human Capital

**4**

Officer (CHCO)), and Mateo Goldman (SVP Investments) detailing the exclusive EEO work that Ms. Jewell's team managed for DFC, which she led as the official Director of EEO and a direct report to the CEO. There was no response for a few hours, so Ms. Jewell sent a follow up email, inquiring why none of the leaders were discussing the implications of the OPM memo with her given that she was the only subject matter expert; the Agency did not have a CEO; and she was the Vice President of the team affected. Shortly thereafter, Frank Esquivel and Jamesa Hunter called Ms. Jewell via Teams and said they were working behind the scenes to advocate for Ms. Jewell's team to remain at DFC. Mr. Esquivel commented that "they" were deciding whether to release Ms. Jewell's entire team, just her deputy whose title included DEIA, or just Ms. Jewell and the deputy with PDs with some DEIA content. The position descriptions of each member of the EEO team and members of OHRM had some DEIA content but not "Diversity" or "Inclusion" in their titles. Mr. Esquivel and Ms. Hunter stated that they had called and emailed OPM to ask if EEO offices were subject to the DEIA order to be "closed" and personnel placed on administrative leave. They stated that they did not receive a response from OPM, but DFC took the action to put Ms. Jewell and one of her deputies on administrative leave anyway. Later that day, the email designations for Ms. Jewell and her staff were changed from OEDI to OCE and then back to OEDI. In addition, each team member's access to the OEDI drive and files was shut down.

15.     Despite the fact that Plaintiff Jewell's office did not focus exclusively on DEIA initiatives and programs, Ms. Jewell and her deputy were placed on administrative leave on January 22, 2025. She received a MS Teams call from Jamesa Hunter and Stephen Schubart stating that pursuant to OPM's "Initial Guidance Regarding DEIA Executive Orders," effective immediately" she was on paid administrative leave with a bar to DFC government systems, facilities, and government furnished equipment. Plaintiff Jewell's email was shut down at 5:26 p.m. on January

5

22, 2025. Ms. Jewell's Deputy Director, DEIA, Karmen Smith, was also placed on paid leave. The other team members, Ann Clark, Senior EEO Specialist; Craig Cassidy, Deputy Director EEO; and Kia Gunter, EEO Specialist, all career employees, were not placed on leave. These individuals reported directly to Plaintiff Jewell and did not have a "supervisor" position description.

16. On January 28, 2025, Ms. Jewell received a call from Jamesa Hunter, the CHCO. Ms. Hunter stated to Ms. Jewell that she could choose between resigning immediately without severance and in return, OHRM would state on her SF50 that she was leaving for personal reasons; or she would be terminated on February 22, 2025 and her SF50 would reflect termination. Ms. Jewell asked by whose authority this determination was made because it was inconsistent with OPM's 1/24/25 "Guidance Regarding RIF's of DEIA Offices," which said "OPM's initial guidance required agencies to submit written plans no later than January 31, 2025 for executing a reduction-in-force (RIF) action regarding the employees who work in a DEIA office. However, agencies can and should begin issuing RIF notices to employees of DEIA offices now." Ms. Jewell was told that the front office decided the Agency did not have to RIF her and pay severance because she was an Administratively Determined employee. Ms. Jewell asked how she was placed on administrative leave because of the guidance from OPM, but DFC decided not to implement the second part of the OPM guidance and treat it as a reduction in force. Plaintiff Jewell informed Ms. Hunter that the agency had no CEO, and thus, no one was authorized to execute the removal clause per her employment contract. There was no response to Ms. Jewell's comments.

17. After facing multiple lawsuits and extreme public backlash from the Executive Orders, on February 5, 2025, the Acting Director of OPM issued a Memorandum entitled Further Guidance Regarding Ending DEIA Offices, Programs and Initiatives. The Memorandum stated that it sought to provide "additional guidance regarding the President's executive orders, including those

titled, "Ending Radical and Wasteful Government DEI Programs and Preferencing," "Ending Illegal Discrimination and Restoring Merit-Based Opportunity," and "Initial Recissions of Harmful Executive Orders and Actions." The guidance made clear that federal agencies were not under an obligation to terminate employees who work in DEIA offices with additional responsibilities. "This does not apply to, and agencies should retain, personnel, offices and procedures required by statute or regulation to counsel employees allegedly subjected to discrimination, receive discrimination complaints, collect demographic data, and process accommodation requests. Such functions can and should be transferred among personnel and offices at the agency if those functions were previously handled by DEIA office that is subject to a reduction-in-force action. In doing so, agencies should take care that the functions of any such office are strictly limited to the duties within its statutory authority and that staffing levels are consistent with those responsibilities." . . . "In executing reduction-in-force actions regarding employees in DEIA offices, agencies should therefore retain the minimum number of employees necessary to ensure agency compliance with applicable disability and accessibility laws, including those requiring the collection, maintenance, and reporting of disability information."

18. Following the notice of her termination, Ms. Jewell learned that other non-DEIA Administratively Determined DFC employees were offered the Deferred Resignation Offer issued by OPM. Plaintiff Jewell was not given this offer.

19. As a result of DFC's rash action, Plaintiff Jewell was unlawfully placed on administrative leave and terminated from employment, without payment of the reduction in force severance pay contained in her contract.

<u>Count I</u>
**Violation of the Administrative Procedure Act**
**5 U.S.C. § 706**

7

Plaintiffs incorporate the allegations in paragraphs 1 through 19 as if fully set forth herein.

20. The Administrative Procedure Act ("APA"), 5 U.S.C. § 706, provides that a district court may hold unlawful agency action found to be arbitrary, capricious, an abuse of discretion, and in violation of the Constitution. The APA permits the Court to review final agency action, as well as action for which there is no other adequate remedy. See 5 U.S.C. § 702, 704. Defendant has determined erroneously that it was required to close the office Plaintiff worked in and terminated her employment based on an ambiguous Executive Order issued by the White House. Defendant's erroneous identification of Plaintiff as working solely in a DEI/DEIA position, placement on administrative leave and termination, and denial of reassignment offered to other Agency employees are the very definition of arbitrary, capricious and abusive agency action.

21. The actions taken against Plaintiff are contrary to her constitutional rights under the First Amendment to freedom of speech and association, and were taken based upon her (assumed) beliefs about a political issue or viewpoint, which is irrelevant. The actions taken against Plaintiff are contrary to her rights under the First and Fifth Amendments to the U.S. Constitution, including the freedom of association; freedom from infringement of her liberty interest in her name and reputation; and equal protection under the laws of the United States.

22. As an Administratively Determined employee, Plaintiff has no right to challenge her termination before the Merit Systems Protection Board (MSPB), and there is no other forum available to Plaintiff to challenge the defamatory statements made about Plaintiff when she was abruptly placed on administrative leave for being "DEIA" employee, including statements that employees such as Plaintiff engaged in discrimination and was removed from employment because she worked solely on diversity, equity and inclusion activities.

23. It is unprecedented for a federal employee to be terminated pursuant to public statements by the President that their last assignment involved dangerous, demeaning, immoral and

illegal activity, undermining of national unity and denying, discrediting and undermining traditional American values, supporting an unlawful, corrosive and pernicious identity-based system, stigmatizing and demeaning hardworking Americans, resulting in tragic and disastrous consequences on the basis of discrimination.

24. There is no other remedy than a judicial remedy for the harm Plaintiff has suffered and will continue to suffer.

## Count II

### Violation of the U.S. Constitution, Amend. 1

Plaintiffs incorporate the allegations in paragraphs 1 through 24 as if fully set forth herein.

25. The First Amendment provides in pertinent part that Congress shall make no law abridging the freedom of speech, or the right of the people to petition the Government for a redress of grievances. It further prohibits the regulation or censure of speech based on "'the specific motivating ideology or the opinion or perspective of the speaker.'" *Reed v. Town of Gilbert*, 576 U.S. 155, 168-69 (2015) (citations omitted). This government action is a "'blatant' and `egregious form of content discrimination'" and is subject to strict scrutiny." *Reed,* 576 U.S. at 168, 171. Plaintiff's identification as a "DEIA" employee is contrary to her constitutional right under the First Amendment to free speech. Plaintiff was targeted because of her assumed beliefs about a domestic political issue, or perceived viewpoint, which was unrelated to the performance of her duties at DFC. The DEIA designation of Plaintiff as a DEIA employee constitutes viewpoint discrimination because it singled out and punished Plaintiff for her perceived association with and advocacy on behalf of DEIA policies. The fact that DFC reassigned some of the individuals in Plaintiff's office confirms that Plaintiff was terminated in retaliation for her (assumed) belief about DEIA policies, a political issue disfavored by the new Administration. Plaintiff was damaged by the Agency's erroneous identification of Plaintiff as working in a DEI/DEIA position, placed on administrative leave and terminated, and denied reassignment offered to other Agency employees. The Project 2025 plan as outlined at project2025.org and a tracker

to identify and erase DEI/DEIA from the federal government evidences the political motivation and movement of the current White House administration and agency leads to include DFC. The designation of the Plaintiff as a DEIA employee has caused and is causing ongoing and irreparable harm to the Plaintiff.

### Count III

### Violation of U.S. Const. Amend. V

*Unconstitutional Denial of Due Process*

Plaintiffs incorporate the allegations in paragraphs 1 through 25 as if fully set forth herein.

26.　The Fifth Amendment provides in pertinent part that "no person shall . . . be deprived of life liberty or property, without due process of law." Defendant designated Plaintiff as DEIA employee who must be terminated from the Agency. The designation by the new administration of "DEIA" employees as individuals who discriminate against Americans and work in programs that divide Americans by race, waste taxpayer dollars and result in shameful discrimination, impairs multiple liberty and property interests protected by the Due Process Clause, and specifically are contrary to Plaintiff's constitutional right to a liberty interest in her name and reputation. The designation of Plaintiff as "DEIA" staff and her office as a DEIA office, impairs Plaintiff's ability to follow her chosen career profession with the federal government. The DEIA designation harms Plaintiff's reputation interest by stigmatizing Plaintiff as a federal employee who discriminates against Americans and her work as "wasteful," "shameful" and "divisive." Plaintiff was damaged by her erroneous identification as working in a DEI/DEIA position, placement on administrative leave and termination, and denial of reassignment offered to other Agency employees.

27.　The Plaintiff did not receive notice prior to being labelled with the DEIA designation. Plaintiff was not aware of conduct that would subject her to punishment or the severity of the potential punishment for working in her position. Defendant did not and has not provided Plaintiff with any opportunity to challenge the DEIA designation prior to the announcement that her office was a DEIA

office that worked solely on DEIA work and that she and her office were DEIA staff. After the DEIA designation, Plaintiff has not been given an opportunity by Defendnant to challenge the DEIA designation. No compelling government interest justifies Defendant's violation of Plaintiffs' due process rights. Defendant violated Plaintiffs' rights under the Fifth Amendment by its erroneous identification of Plaintiff as working in a solely DEI/DEIA position and denial of reassignment offered to other Agency employees. The decision to label Plaintiff's office as a DEIA office was based on improper purposes, among them, for retaliatory purposes and to punish people who worked in DEIA offices, compounded here because Plaintiff did not work solely on DEIA issues. The DEIA designation is based on false premises and the sanctions it imposed are disproportionate to any perceived infraction. This improper purpose and absence of any legitimate justification demonstrates that the DEIA designation is abusive and irrational. As a result of Defendant's actions, Plaintiff's Fifth Amendment right to due process has been violated. Defendant's actions have caused Plaintiff to suffer ongoing and irreparable harm.

<u>Count IV</u>

**Violation of U.S. Const. Amend. V**

*Unconstitutional Denial of Equal Protection*

Plaintiffs incorporate the allegations in paragraphs 1 through 27 as if fully set forth herein.

28. The Equal Protection Clause as incorporated by the Fifth Amendment to the U.S. Constitution prohibits the federal government, its agencies, its officials, and its employees form denying person the equal protection of the laws. The Equal Protection Clause prohibits the government from favoring similarly situated individuals without a constitutionally legitimate basis. *Vill. Of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000). To justify discriminatory conduct, the government must put forward a "plausible reason" for its differential treatment. *FCC v. Beach Communications, Inc.,* 508 U.S. 307, 313-14 (1993). The actions cannot be "so attenuated" from its conduct "as to render [it] arbitrary and irrational." *City of Cleburne v. Cleburne Center, Inc.,* 473 U.S. 432, 446 (1985)

(citations omitted). "[A] bare desire to harm a politically unpopular group" is "not [a] legitimate state interest[.]" *City of Cleburne,* 473 U.S. at 447.

29. The purpose of the DEIA designation and designating Plaintiff's office as a DEIA office was to discriminate against the Plaintiff. The DEIA designation targeted the Plaintiff with discipline and sanctions and denied all rights afforded to all other federal employees similarly situated to Plaintiff. The improper motive behind the DEIA designation is apparent on its face and through public statements by the new Administration. The government lacks even a rational basis for the DEIA designation of Plaintiff's office as solely a DEIA office. The DEIA designation seeks to punish the Plaintiff for a perceived belief of advocating for DEIA policies. The DEIA designation of Plaintiff's office as a DEIA office and the Plaintiff as DEIA staff is a violation of the Equal Protection Clause and the DEIA designation has caused and is causing ongoing and irreparable harm to the Plaintiff.

## Prayer for Relief

Wherefore, Plaintiff respectfully request that the Court enter an award and judgment in favor of Plaintiff, against Defendant as follows:

(a) A finding that Defendant's actions are in violation of the Administrative Procedure Act, 5 U.S.C. § 706, et seq.; and a violation of Plaintiff's rights under the First and Fifth Amendments;

(b) Injunctive and declaratory relief under the APA, the First and Fifth Amendments, and immediately enjoin Defendant from designating Plaintiff's office as a DEIA office and Plaintiffs as DEIA staff and order a public recantation of these designations to DFC employees and the public at large and reinstatement to employment or back pay and front pay or agreed upon reduction in force pay, or compensatory damages in lieu of front pay;

(c) Preliminarily, and then permanently, enjoin Defendant from designating Plaintiff's office as a DEIA office and Plaintiff as DEIA staff;

(d) Expenses and costs, including attorneys' fees, pursuant to 5 U.S.C. § 504; and

(e) Such other relief as the Court deems appropriate.

# JURY TRIAL DEMAND

Plaintiff demands a jury trial on all claims against Defendant.

May 1, 2025                         Respectfully submitted,

/s/ David A. Branch
David A. Branch
D.C. Bar No. 438764
Law Office of David A. Branch & Assoc., PLLC
1120 Connecticut Avenue, NW #500
Washington, DC 20036
202.785.2805
davidbranch@dbranchlaw.com