UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NEONU JEWELL,<br><br>             Plaintiff,<br><br>     v.<br><br>DEV JAGADESAN,<br>Acting Chief Executive Office of the U.S.<br>International Development Finance Institution,<br><br>          Defendant. | Civil Action No. 25-1322 (DLF) |

**<u>MOTION TO DISMISS AND MEMORANDUM IN SUPPORT THEREOF</u>**

Dev Jagadesan, Acting Chief Executive Officer of the U.S. International Development Finance Corporation (the "Corporation"), respectfully moves this Court to dismiss Plaintiff Neonu Jewell's Complaint (ECF No. 1) for lack of subject-matter jurisdiction and for failure to state a claim. Fed. R. Civ. P. 12(b)(1), (b)(6).

## INTRODUCTION

Jewell served as the Corporation's former Chief Diversity and Inclusion Officer. In January 2025, her employment with the Corporation was terminated as part of the implementation of a Presidential executive order ending diversity, equity, and inclusion programs across the government. Jewell challenges her "identification as a 'DEIA' employee" and her termination. She brings a four-count complaint asserting claims under the Administrative Procedure Act (the "APA"), the First Amendment, and the Fifth Amendment. Jewell's claims fail.

*First*, the Civil Service Reform Act (the "CSRA") forecloses Jewell's APA claim. The CSRA provides a comprehensive review process for federal employees to challenge adverse employment actions, including termination, and Jewell does not explain why she should be permitted to avoid that process. *Second*, Jewell's First Amendment claim fails because she does not allege that she engaged in a protected activity protected by the First Amendment. Third, Jewell's Fifth Amendment claims fail because she does not allege that the Corporation has made any derogatory statements about her or otherwise publicly discussed her employment or the circumstances of her termination. And all of her claims are barred by sovereign immunity to the extent she seeks money damages.

The Corporation respectfully requests that the Court dismiss the Complaint.

## BACKGROUND

The following factual assertions, taken from Jewell's complaint, are presumed to be true for purposes of evaluating the complaint's sufficiency. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-

79 (2009).  Jewell alleges that beginning in December 2022 she served as the Corporation's Chief Diversity and Inclusion Officer.  Compl. (ECF No. 1) ¶ 5.  Shortly after, she also assumed the responsibilities of the Corporation's Equal Employment Opportunity Officer.  *Id.* ¶ 6.

On January 20, 2025, the President issued an executive order titled, "Ending Radical and Wasteful Government DEI Programs and Preferencing."  *Id.* ¶ 11.  The following day, the Office of Personnel Management ("OPM") issued a memorandum directing agencies to implement that executive order.  *Id.*  On February 5, 2025, OPM clarified its guidance, noting that agencies should retain personnel and offices required by statute or regulation to counsel employees for alleged discrimination.  *Id.* ¶ 17.

On January 22, 2025, Jewell and her team were placed on administrative leave.  *Id.* ¶ 15.  On January 28, 2025, Jewell was given the option to voluntarily resign or be terminated.  *Id.* ¶ 16.  It appears Jewell elected to be terminated.  *See id.* ¶ 18.  Jewell questions the Corporation's authority to terminate her in the absence of a Chief Executive Officer.  *Id.* ¶ 16.  She says she held an "Administratively Determined" position and could only be removed by the Corporation's Chief Executive Officer.  *Id.* ¶ 7.

Jewell now brings a four-count complaint.  *Id.* ¶¶ 20-29.  Count I is an Administrative Procedure Act challenge to the closure of the Corporation's DEI office and Jewell's termination.  *Id.* ¶ 20.  Count II is a First Amendment challenge to Jewell's "designation" as a "DEIA employee" constituting "viewpoint discrimination" and "punished" Jewell "for her perceived association with an advocacy on behalf of FEIA policies."  *Id.* ¶ 20.  Count III asserts a Fifth Amendment Due Process claim for deprivation of due process of Jewell's "constitutional right to a liberty interest in her name and reputation."  *Id.* ¶ 26.  Count III further alleges that she was erroneously designated "as working in a solely DEI/DEIA position" and was not given an opportunity to "challenge the

DEIA designation." *Id*. ¶ 27. Count IV is a Fifth Amendment Equal Protection claim, asserting that the Corporation "seeks to punish [Jewell] for a perceived belief of advocating for DEIA policies" and denies Jewell "all rights afforded to all other federal employees similarly situated to Jewell." *Id*. ¶ 29. Jewell seeks a declaration that the Corporation's actions violated the APA and the First and Fifth Amendments, an injunction requiring the Corporation to rescind Jewell's designation as a DEIA employee and prohibiting the Corporation from doing so in the future. She also seeks reinstatement or back pay and attorney's fees. *Id*. at 12-13.

## LEGAL STANDARDS

Established law requires the Court to "determine whether it has subject matter jurisdiction in the first instance." *Taylor v. Clark*, 821 F. Supp. 2d 370, 372 (D.D.C. 2011) (cleaned up). Federal courts are courts of limited jurisdiction and the law "presume[s]" that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). "To survive a Rule 12(b)(1) motion, a plaintiff must establish the Court's jurisdiction over his claims." *Sanchez-Mercedes v. Bureau of Prisons*, 453 F. Supp. 3d 404, 414 (D.D.C. 2020). "The Court must 'assume the truth of all material factual allegations in the complaint and construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Id*. (quoting *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011)). The court may consider materials outside the pleadings in determining whether it has jurisdiction. *Jerome Stevens Pharm., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005). "If the Court determines that it lacks jurisdiction as to any claim, it must dismiss that claim." *Sanchez-Mercedes*, 453 F. Supp. 3d at 414. A "dismissal for want of subject-matter jurisdiction can only be without prejudice[.]" *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1253 (D.C. Cir. 2020).

A complaint must be dismissed if it fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quotation marks omitted). The Court must "take as true all well-pled factual allegations within [a plaintiff's] complaint" while also "disregard[ing] any legal conclusions, legal contentions couched as factual allegations, and unsupported factual allegations within the complaint." *Gulf Coast Mar. Supply, Inc. v. United States*, 867 F.3d 123, 128 (D.C. Cir. 2017).

## ARGUMENT

## I.      The Civil Service Reform Act Forecloses Jewell's APA claim.

Jewell brings an APA claim. Compl. (ECF No. 1) ¶¶ 20-24. As federal employee, Jewell is foreclosed from pursuing her claims under the APA. The Civil Service Reform Act "comprehensively overhauled the civil service system, creating an elaborate new framework for evaluating adverse personnel actions against federal employees." *United States v. Fausto*, 484 U.S. 439, 671 (1988) (citation modified). The CSRA "prescribes in great detail the protections and remedies applicable to such action[s], including the availability of judicial review." *Id.* "Just as the CSRA's elaborate framework demonstrates Congress' intent to entirely foreclose judicial review to employees to whom the CSRA denies statutory review, it similarly indicates that extrastatutory review is not available to those employees to whom the CSRA grants administrative and judicial review." *Elgin v. Dep't of Treasury*, 567 U.S. 1, 11 (2012) (citation modified).

Jewell challenges her removal. Compl. (ECF No. 1) ¶ 20. The CSRA considers removal a major adverse personnel action and covered by Subchapter II. 5 U.S.C. § 7512. "Employees covered by Subchapter II are entitled to administrative review by the Merit Systems Protection Board ("MSPB"), and subsequent judicial review in the Court of Appeals for the Federal Circuit." *Kobelia v. FBI*, Civ. A. No. 24-2542 (SLS), 2025 WL 1444509, at *16 (D.D.C. May 20, 2025)

(citation modified).  In other words, Jewell was required "to bring such claims first in an action before the MSPB and thereafter to the Federal Circuit."  *Lacson v. Dep't of Homeland Sec.*, 726 F.3d 170, 174 (D.C. Cir. 2013) (citing 5 U.S.C. §§ 1204, 7701, 7703(b)(1)).  Jewell certainly alleges that "there is no other adequate remedy."  Compl. (ECF No. 1) ¶ 20.  She does not explain, however, why her employment is not governed by the CSRA or why she should avoid the CSRA's prescriptions.  *See* 5 U.S.C. § 7511(b) (listing federal employees exempted from the CSRA).  "As the Supreme Court explained in its foundational opinion on the subject, a 'structural element [of the CSRA] is the primacy of the MSPB for administrative resolution of disputes over adverse personnel action, and the primacy of the United States Court of Appeals for the Federal Circuit for judicial review.'"  *Lacson*, 726 F.3d at 174 (quoting *Fausto*, 484 U.S. at 449).  And "the CSRA is comprehensive and exclusive."  *Grosdidier v. Charman, BBG*, 560 F.3d 495, 497 (D.C. Cir. 2009) (citing 5 U.S.C. §§ 2302(a)(2)(C)(ii), 7511(b)(8)).  The Court should not "allow [Jewell] to circumvent this detailed scheme governing federal employer-employee relations by suing under the more general APA."  *Harrison v. Bowen*, 815 F.2d 1505, 1516 n.25 (D.C. Cir. 1987) (citation modified).

Any doubt that this Court lacks subject-matter jurisdiction over Jewell's claims is resolved by the jurisdiction stripping provision of the Tucker Act.  Here, Jewell seeks "back pay and front pay" or "compensatory damages in lieu of front pay."  Compl. (ECF No. 1) at 12.  The Tucker Act confers exclusive jurisdiction on the Court of Federal Claims over all claims against the government seeking monetary relief in excess of $10,000.  28 U.S.C. § 1491(a)(1).  The Tucker Act covers claims "against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department[.]"  *Id.*  But, "under the comprehensive and integrated review scheme of the CSRA, the [Court of Federal Claims] (and any other court relying

on Tucker Act jurisdiction) is not an 'appropriate authority' to review an agency's personnel determination." *Fausto*, 484 U.S. at 454. So "comprehensive" is the CSRA that it strips the jurisdiction of the sole court permitted to hear most claims against the United States for over ten thousand dollars. *Id*. at 455. Put simply, the CSRA bars Jewell's APA claim and the Court should dismiss it for lack of subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1).

## II.    Jewell's Constitutional Claims Fail.

Counts II-IV are constitutional claims. As explained further below, each fails to state a claim and is subject to dismissal pursuant to Rule 12(b)(6). But the Court need not reach the merits of those claims because they should be dismissed for lack of subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1).

*First*, sovereign immunity bars Jewell's constitutional claims to the extent she seeks money damages. "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Sovereign immunity is "jurisdictional in nature." *Id*. The United States has waived sovereign immunity for certain damages claims. *Sloan v. Dep't of Housing & Urban Dev.*, 236 F.3d 756, 759 (D.C. Cir. 2001) (citing 28 U.S.C. §§ 1346(b), 2674). "However, the United States has not consented to be sued for damages based . . . on constitutional violations." *Cofield v. United States*, 64 F. Supp. 3d 206, 213 (D.D.C. 2014) (citing *Meyer*, 510 U.S. at 476–78). "Consequently, it is clear beyond cavil that the FTCA's waiver does not apply with respect to [Jewell's] claim[], and sovereign immunity bars any claim for money damages against the United States and its agencies." *Id*. at 213-14. The Court should dismiss Jewell's constitutional claims for lack of subject-matter jurisdiction to the extent those claims seek an award of money damages because the United States has not waived sovereign immunity for damages claims arising out of alleged constitutional claims. *See Velikonja v. Gonzales*, 466 F.3d 122, 125 (D.C. Cir. 2006); Fed. R. Civ. P. 12(b)(1).

*Second*, "the CSRA precludes district court jurisdiction over [Jewell's] claims" even those "constitutional claims" seeking "equitable relief." *Elgin*, 567 U.S. at 8. That is because the CSRA "directs that judicial review shall occur in the Federal Circuit." *Id*. at 10. "In only one situation does the CSRA expressly exempt a covered employee's appeal of a covered action from Federal Circuit review based on the type of claim at issue": employment discrimination under Title VII. *Id*. at 13. As explained above, the CSRA applies to Jewell's claims. And Jewell does not bring an employment discrimination claim. The CSRA therefore applies and forecloses Jewell's constitutional claims. The Court should dismiss Jewell's constitutional claims for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1)

## A.    Jewell's First Amendment Claim (Count II) Fails To State a Claim.

Count II should also be dismissed for failure to state a claim. Fed. R. Civ. P. 12(b)(6). Jewell appears to assert "viewpoint discrimination" and "retaliation for her (assumed) belief about DEIA policies." Compl. (ECF No. 1) ¶ 25. In assessing a First Amendment claim in the workplace context, the Court must first determine whether any protected speech is alleged to have occurred. *See Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006); *Connick v. Myers*, 461 U.S. 138, 143 (1983). Although public employees "do not surrender all their First Amendment rights by reason of their employment," they do not enjoy First Amendment protections when performing their official duties. *Garcetti*, 547 U.S. at 417, 422. If the employee's speech cannot "be fairly characterized as constituting speech on a matter of public concern, it is unnecessary for [the Court] to scrutinize the reasons for [the employee's] discharge." *Connick*, 461 U.S. at 146; *see also Heffernan v. City of Paterson*, 578 U.S. 266, 271 (2016) (explaining the question in *Connick* as "whether the circulation of that document amounted to constitutionally protected speech" and "[i]f not, the Court need go no further"). The Supreme Court has explained,

> [w]hen employee expression cannot be fairly considered as relating to any matter
> of political, social, or other concern to the community, government officials should
> enjoy wide latitude in managing their offices, without intrusive oversight by the
> judiciary in the name of the First Amendment. Perhaps the government employer's
> dismissal of the worker may not be fair, but ordinary dismissals from government
> service which violate no fixed tenure or applicable statute or regulation are not
> subject to judicial review even if the reasons for the dismissal are alleged to be
> mistaken or unreasonable.

*Connick*, 461 U.S. at 146.  When, as here, "the employee is simply performing his or her job

duties," and an employment action is taken based on the performance of those duties, there is "no

warrant for" judicial scrutiny.  *Garcetti,* 547 U.S. at 423.  "Underlying [the Supreme Court's First

Amendment] cases has been the premise that while the First Amendment invests public employees

with certain rights, it does not empower them to 'constitutionalize the employee grievance.'"  *Id.*

at 420 (quoting *Connick*, 461 U.S. at 154).

Here, Jewell's alleged protected activity is the performance of her official duties, namely,

her position as the Corporation's DEIA Officer.  Compl. (ECF No. 1) ¶ 5.  That is not a First

Amendment protected activity because the Jewell "did not act as a citizen when [s]he went about

conducting [her] daily professional activities[.]"  *Garcetti*, 547 U.S. at 422.  "When [s]he went to

work and performed the tasks [s]he was paid to perform, [Jewell] acted as a government

employee."  *Id.*  Consequently, Jewell did not engage in protected First Amendment activity when

she worked on matters in her official capacity.  Her First Amendment claim fails.

## B. Jewell's Fifth Amendment Claims (Counts III and IV) Fail.

Counts III and IV are Fifth Amendment claims and should be dismissed for failure to state

a claim.  Fed. R. Civ. P. 12(b)(6).  Jewell alleges a Due Process violation because she "did not

receive notice prior to being labelled with the DEIA designation."  Compl. (ECF No. 1) ¶ 27.  This

appears to be a procedural due process claim.  *Id.* ¶ 26.  She likewise alleges that her "designation"

and "sanctions" denied her "all rights afforded to all other federal employees similarly situated to

[her]." *Id.* ¶ 29. To succeed on a Fifth Amendment claim, Jewell must identify a protected property or liberty interest. Jewell appears to assert "liberty interest in her name and reputation[.]" *Id.* ¶¶ 21, 26.

"A government employee's liberty interest is implicated" where "the government altered the status of the employee in some tangible way by foreclosing the employee's future employment opportunities" and "this change in status was accompanied by injury to the employee's good name, reputation, honor, integrity, or imposition of a similar stigma." *Sierzega v. Ashcroft*, 358 F. Supp. 2d 3, 5–6 (D.D.C. 2005) (emphasis in original). The D.C. Circuit has "recognized the possibility of an action for deprivation of a liberty interest" under two theories of recovery: "reputation-plus" and "stigma or disability." *Langeman v. Garland*, 88 F.4th 289, 296 (D.C. Cir. 2023). *Langeman* precludes Jewell's claims.

In *Langeman*, the FBI summarily terminated a FBI agent's employment for "mishandling of charges of sexual abuse against [Larry] Nassar, who molested young gymnasts placed in [Nassar's] care." *Id.* at 292. The plaintiff there invoked the "reputation-plus" and "stigma or disability" theories to assert a Fifth Amendment claim. *Id.* at 296. The D.C. Circuit rejected both theories, holding that a FBI agent lacks a constitutionally protectable property interest in his continued employment and cannot plead a deprivation of a liberty interest under a "reputation-plus" or "stigma or disability" theory in the absence of allegations that "the FBI actually revealed his identity in any defamatory public statement" and in the absence of any allegation of an adverse employment action. *Id.* The D.C. Circuit explained that "the fact that the media reported on [the FBI agent's] termination does not establish that [the government] made a 'public disclosure' of any defamatory statements." *Id.* The D.C. Circuit likewise rejected the "stigma or disability," which the Court explained "required that there be some statement of an attempt to obtain

subsequent employment and a rejection for the job resulting from the alleged stigma or disability" and the FBI agent's "complaint is [] lacking in identifying in what ways [he] is broadly precluded from pursuing his chosen career or foreclosed from public and private employment in law enforcement." *Id*. at 297.

So too here. Jewell does not allege that the Corporation "actually revealed [her] identity" let alone in "any defamatory public statement." *Id*. at 296. She does not allege that the Corporation has made any public statements about her, her employment at the Corporation, or the reasons for her termination. *See generally* Compl. (ECF No. 1). As a result, Jewell's "reputation-plus claim fails because [she] cannot establish that [she] suffered defamation[.]" *Langeman*, 88 F.4th at 297. Jewell's stigmas claim likewise fails because she does not allege she "attempted to obtain employment elsewhere and [was] rejected because of [the Corporation's] alleged conduct." *Id*.

Not having pled facts in support of (or even identified) a cognizable property or liberty interest, Counts II and III should be dismissed for failure to state a Fifth Amendment claim.

## CONCLUSION

For these reasons, the Corporation respectfully requests that the Court dismiss the Complaint.

Dated: August 28, 2025                    Respectfully submitted,

                                          JEANINE FERRIS PIRRO
                                          United States Attorney


                                          By: _____/s/ *Dimitar P. Georgiev*_____
                                              DIMITAR P. GEORGIEV, D.C. Bar # 1735756
                                              Assistant United States Attorney
                                              601 D Street, NW
                                              Washington, DC 20530
                                              (202) 252 – 7678

                                          *Attorneys for the United States of America*

- 10 -

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NEONU JEWELL,

        Plaintiff,

   v.

DEV JAGADESAN,
Acting Chief Executive Office of the U.S.
International Development Finance Institution,

        Defendant.

Civil Action No. 25-1322 (DLF)

**[PROPOSED] ORDER**

UPON CONSIDERATION of Defendant's motion to dismiss, and the entire record herein, it is hereby

ORDERED that Defendant's motion is GRANTED, and it is further

ORDERED that the Complaint (ECF No. 1) is DISMISSED.

SO ORDERED:

_____
Date

_____
DABNEY L. FRIEDRICH
United States District Judge