UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NEONU JEWELL,

   *Plaintiff*,

  v.

DEV JAGADESAN,

   *Defendant*.

No. 25-cv-1322 (DLF)

**MEMORANDUM OPINION**

  Neonu Jewell brings this action against Dev Jagadesan, the Acting Chief Executive Officer of the U.S. Development Finance Corporation (DFC), challenging her termination as an officer of DFC.[1]  Before the Court is DFC's Motion to Dismiss.  Def.'s Mot., Dkt. 10.  For the following reasons, the Court will grant the motion.

**I. BACKGROUND**

  In December 2022, Jewell joined DFC as its Chief Diversity and Inclusion Officer (CDIO).  Compl. ¶ 5, Dkt. 1.  After DFC's Equal Employment Opportunity (EEO) Officer resigned, Jewell took on the EEO Director position in addition to CDIO.  *Id.* ¶ 6.  Her "position description" stated that she was the "principal advisor" on DFC's EEO program; its Diversity, Equity, Inclusion, and Accessibility (DEIA) program; and its Justice, Equity, Diversity, and Inclusion program.  *Id.*  She was also responsible for "government-wide policy to advance equity across the federal government."  *Id.*

---

[1] The Court will refer to Jagadesan in his official capacity as "DFC."

On January 20, 2025, President Trump signed an executive order entitled "Ending Radical and Wasteful Government DEI Programs and Preferencing." *Id.* ¶¶ 11, 17. The following day, the Office of Personnel Management (OPM) issued a memorandum directing agency heads to place employees of DEIA offices on administrative leave while each "agency takes steps to close and end all DEIA initiatives, offices and programs." *Id.* ¶ 11. On January 22, 2025, Jewell was placed on paid administrative leave, along with her deputy director of DEIA. *Id.* ¶ 15. Jewell's other team members, whose position titles referenced only EEO responsibilities, were not placed on leave. *Id.*

On January 28, 2025, DFC's Chief Human Capital Officer gave Jewell a choice between resigning immediately or being terminated on February 22, 2025. *Id.* ¶ 16. Jewell was eventually terminated "without payment of the reduction in force severance pay contained in her contract."[2] *Id.* ¶ 19. Jewell later learned that "other non-DEIA Administratively Determined DFC employees" were presented with a deferred resignation option that she was not offered. *Id.* ¶ 18.

As an Administratively Determined employee, Jewell had "no right to challenge her termination before the Merit Systems Protection Board," *id.* ¶ 22, so she sued DFC in this Court. Her complaint asserts four claims. Jewell alleges that her termination from DFC was arbitrary and capricious and contrary to law, in violation of the Administrative Procedure Act (APA) (Count I). *Id.* ¶¶ 20–24. She also claims that her termination violated her rights under the First Amendment of the U.S. Constitution (Count II), *id.* ¶ 25; denied her due process under the Fifth Amendment (Count III), *id.* ¶¶ 26–27; and denied her equal protection of the laws in violation of the Fifth

---

[2] Jewell also alleges that she "could only be removed by DFC's CEO" and that, at the time of her termination, DFC had no CEO. Compl. ¶ 7; *see id.* ¶¶ 10, 16. She further alleges that DFC failed to adhere to reduction-in-force procedures, *id.* ¶ 16, and suggests that her termination contravened OPM guidance to retain a sufficient number of EEO officers, *id.* ¶ 17.

Amendment (Count IV), *id.* ¶¶ 28–29.  Jewell seeks declaratory and injunctive relief, including reinstatement, along with "back pay and front pay or agreed upon reduction in force pay, or compensatory damages in lieu of front pay." *Id.* at 12.

DFC has filed a motion to dismiss for lack of jurisdiction and failure to state a claim.  Def.'s Mot. 1.

## II.  LEGAL STANDARDS

Under Rule 12(b)(1), a party may move to dismiss a claim over which the court lacks subject-matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  A motion for dismissal under Rule 12(b)(1) "presents a threshold challenge to the court's jurisdiction." *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987).  Federal district courts are courts of limited jurisdiction, and it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Thus, the plaintiff bears the burden of establishing jurisdiction. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

"When ruling on a Rule 12(b)(1) motion, the court must treat the complaint's factual allegations as true and afford the plaintiff the benefit of all inferences that can be derived from the facts alleged." *Han v. Lynch*, 223 F. Supp. 3d 95, 103 (D.D.C. 2016) (citation modified).  Those factual allegations, however, "receive closer scrutiny than they would in the Rule 12(b)(6) context." *Id.* (citation modified).  Also, unlike when evaluating a Rule 12(b)(6) motion, a court may consider documents outside the pleadings to evaluate whether it has jurisdiction. *See Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).  If the court determines that it lacks jurisdiction, it must dismiss the claim or action.  Fed. R. Civ. P. 12(h)(3).

Rule 12(b)(6) allows a defendant to move to dismiss the complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6)

motion, a complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A facially plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Well-pleaded factual allegations are "entitled to [an] assumption of truth," *id.* at 679, and the court construes the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged," *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (citation modified).  But the court need not accept "a legal conclusion couched as a factual allegation" or an inference unsupported by the facts alleged in the complaint.  *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

### III.   ANALYSIS

#### A.   Jurisdiction

The Civil Service Reform Act (CSRA) "provides a comprehensive scheme to administer adverse personnel actions against federal employees."  *Graham v. Ashcroft*, 358 F.3d 931, 933 (D.C. Cir. 2004).  "It prescribes in great detail the protections and remedies applicable to such actions, including the availability of judicial review."  *Id.* (citation modified) (quoting *United States v. Fausto*, 484 U.S. 439, 443 (1988)).  Under Subchapter II of the CSRA, a covered federal employee may challenge her termination before the Merit Systems Protection Board (MSPB), with judicial review available in the Court of Appeals for the Federal Circuit.  *Id.*; *see also* 5 U.S.C. §§ 7512, 7513(d), 7701, 7703.

Jewell maintains that, as an Administratively Determined employee, she is not covered by the CSRA and therefore cannot challenge her termination before the MSPB.  Compl. ¶ 22; *see also* Pl.'s Opp'n 6, Dkt. 11 (citing 5 U.S.C. § 7511(b)) ("[T]he CSRA does not cover certain excepted

service employees" like Jewell.); 22 U.S.C. § 9613(h)(2)(A) ("Administratively determined employees" at DFC "may be appointed, compensated, or removed without regard to title 5."). Accordingly, Jewell argues that she must be able to challenge her termination directly in federal court because, with "no recourse under the CSRA, the APA and the Constitution provide the only available means of judicial review." Pl.'s Opp'n 8. Conversely, DFC contends that the "CSRA's comprehensive framework is the sole remedy for employment actions" and Jewell's exclusion from the CSRA serves as a "jurisdictional bar" to bringing her claims in federal court. Def.'s Reply 3, Dkt. 12.

The question before the Court is whether a federal employee's exclusion from the CSRA's remedial scheme bars her from bringing statutory and constitutional claims challenging her termination in federal district court.

The CSRA bars Jewell's APA claim. "[T]he exclusion of particular employees . . . from the CSRA was not an invitation to those employees to sue under other statutes but a 'manifestation of a considered congressional judgment that they should not have statutory entitlement to review.'" *Filebark v. U.S. Dep't of Transp.*, 555 F.3d 1009, 1013 (D.C. Cir. 2009) (quoting *Fausto*, 484 U.S. at 448–49); *see also Graham*, 358 F.3d at 934 (In *Fausto*, the "Court reasoned that in not granting review to *some* employees under the CSRA for actions covered by the CSRA, Congress meant to preclude those employees from securing review under other avenues.").[3] The D.C. Circuit has "held that [the CSRA's] comprehensive employment scheme preempts judicial review under the

---

[3] Jewell asserts that, because the employee in *United States v. Fausto*, 484 U.S. 439 (1988), was covered by the CSRA and could therefore "seek review before the MSPB," he impermissibly "sought to bypass the system Congress created" by suing under a different statute. Pl.'s Opp'n 6. This argument misreads *Fausto*. Fausto, like Jewell, could *not* seek review under the CSRA, *Fausto*, 484 U.S. at 441–42, 455, and the Court held that the CSRA's exclusion of Fausto prevented him from seeking review under a different statute, *id*. at 455.

more general APA even when that scheme provides no judicial relief—that is, 'what you get under the CSRA is what you get.'" *Filebark*, 555 F.3d at 1010 (quoting *Fornaro v. James*, 416 F.3d 63, 67 (D.C. Cir. 2005)); *see also Elgin v. Dep't of Treasury*, 567 U.S. 1, 11 (2012) ("[T]he CSRA's elaborate framework demonstrates Congress' intent to entirely foreclose judicial review to employees to whom the CSRA *denies* statutory review." (citation modified)).  The Circuit's "cases expressly teach that those left out of this scheme are left out on purpose," and Congress's exemption of Administratively Determined employees like Jewell from the CSRA's remedial scheme prevents her from seeking judicial review under the APA.  *Filebark*, 555 F.3d at 1014; *see also Lamb v. Holder*, 82 F. Supp. 3d 416, 420–22 (D.D.C. 2015).

On the other hand, Jewell's exclusion from the CSRA does not preclude her from bringing constitutional claims in this Court.  "The law in this Circuit generally allows federal employees to seek equitable relief (though not to recover damages) against their employers for alleged constitutional violations, even where similar statutory claims would be barred."  *Graham v. DOJ*, No. 02-cv-1231, 2002 WL 32511002, at *3 (D.D.C. Nov. 20, 2002) ("Although the CSRA precludes plaintiff from bringing his APA claims, his constitutional challenges to the Bureau's actions stand on a different footing."), *aff'd in part sub nom. Graham v. Ashcroft*, No. 03-5025, 2003 WL 21939757 (D.C. Cir. Aug. 5, 2003) (per curiam), *and, Graham v. Ashcroft*, 358 F.3d 931 (D.C. Cir. 2004).  Courts require a "heightened showing" of Congressional intent before "construing [a statute] to deny any judicial forum for a colorable constitutional claim."  *Elgin*, 567 U.S. at 9 (citation modified) (quoting *Webster v. Doe*, 486 U.S. 592, 603 (1988)).

Courts in this Circuit have observed that the CSRA does not expressly preclude judicial review of constitutional claims by employees excluded from its remedial scheme.  *See, e.g., Lamb*, 82 F. Supp. 3d at 422–24 (collecting cases); *Turner v. U.S. Agency for Glob. Media*, 502 F. Supp.

6

3d 333, 371 (D.D.C. 2020) ("[B]oth because of and despite the fact non-covered government workers lack any CSRA remedy, judicial review of claims related to CSRA-covered actions brought by such employees, *other than claims for equitable relief for constitutional wrongs*, is also precluded." (emphasis added)).  This Court agrees and concludes that it has jurisdiction over Jewell's constitutional claims.[4]

Accordingly, the Court will dismiss Count I for lack of jurisdiction and will address DFC's Rule 12(b)(6) arguments as to Counts II, III, and IV.

### B.    First Amendment Claim (Count II)

Jewell alleges that she was "terminated in retaliation" for her "assumed beliefs about" and "advocacy on behalf of DEIA policies."  Compl. ¶ 25.

This Circuit applies a four-factor test to resolve First Amendment retaliation claims by government employees:

> First, the public employee must have spoken as a citizen on a matter of public concern.  Second, the court must consider whether the governmental interest in promoting the efficiency of the public services it performs through its employees outweighs the employee's interest, as a citizen, in commenting upon matters of public concern.  Third, the employee must show that his speech was a substantial or motivating factor in prompting the retaliatory or punitive act.  Finally, the employee must refute the government employer's showing, if made, that it would have reached the same decision in the absence of the protected speech.

*Bowie v. Maddox*, 642 F.3d 1122, 1133 (D.C. Cir. 2011) (citation modified); *cf. Heffernan v. City of Paterson*, 578 U.S. 266, 273 (2016) ("When an employer demotes an employee out of a desire

---

[4] DFC also contends that Jewell's constitutional claims must be dismissed for lack of jurisdiction to the extent she seeks damages.  Def.'s Mot. 6.  But Jewell disclaims seeking damages in her brief, Pl.'s Opp'n 9 (Jewell "seeks equitable relief, not damages."), so the Court need not address DFC's sovereign immunity argument.

to prevent the employee from engaging in political activity that the First Amendment protects, the employee is entitled to challenge that unlawful action under the First Amendment.").

Jewell fails to state a First Amendment claim because she does not identify any speech made outside of her duties as Chief Diversity and Inclusion Officer at DFC. Jewell "did not act as a citizen" for "First Amendment purposes" when performing her "official duties" as CDIO. *Garcetti v. Ceballos*, 547 U.S. 410, 421–22 (2006). And her complaint lacks factual allegations about her speech "as a citizen" or any other activity protected by the First Amendment. *See id.* ("Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen. It simply reflects the exercise of employer control over what the employer itself has commissioned or created.").

Jewell's conclusory argument that her "claim arose not from the content of her official duties, but from the government's act of punishing her for an assumed political viewpoint," Pl.'s Opp'n 10 (citing *Heffernan*, 578 U.S. at 272–73), is unsupported by her factual allegations and therefore fails to "state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570. Jewell alleges that the President's Executive Order broadly disparaged DEIA programs. *See* Compl. ¶ 23. But she does not allege any facts to show that she was punished for her own protected speech or perceived beliefs about DEIA work. In fact, Jewell's complaint implies that she was terminated because DFC's DEIA program, which she headed, was shut down. *See* Compl. ¶¶ 5–6, 11, 14–15. The Court will dismiss Count II for failure to state a claim.

### C. Fifth Amendment Due Process Claim (Count III)

Jewell claims that she was deprived of her "liberty interest in her name and reputation" without due process when the government made disparaging public statements about DEIA

8

programs and then erroneously "designated" her a "DEIA employee" without giving her an opportunity to challenge that designation.[5] Compl. ¶¶ 26–27.

"This Circuit has recognized two theories under which federal employees may pursue a liberty interest claim based on adverse employment action taken against them." *Graham*, 2002 WL 32511002, at *4. "The first, known as 'reputation-plus,' consists of defamation by the government 'accompanied by a discharge from government employment or at least a demotion in rank or pay.'" *Id.* (quoting *O'Donnell v. Barry,* 148 F.3d 1126, 1140 (D.C. Cir. 1998)). Jewell's claim fails on this theory because she does not allege sufficient facts to show that she was defamed in connection with her termination. The President's general disparagement of DEIA initiatives in an executive order as "wasteful," "shameful," and "divisive," Compl. ¶ 26; *see also* Pl.'s Opp'n 12 ("[T]he government itself broadcasted stigmatizing statements about *DEIA employees at large*." (emphasis added)), did not specifically defame Jewell. And Jewell fails to allege a public statement that identified her and tarnished her personal reputation. *See, e.g.*, *Wisconsin v. Constantineau*, 400 U.S. 433, 435–37 (1971); *Doe v. DOJ*, 753 F.2d 1092, 1105, 1110–12 (D.C. Cir. 1985); *Harrison v. Bowen*, 815 F.2d 1505, 1518 (D.C. Cir. 1987); *Langeman v. Garland*, 88 F.4th 289, 292, 296–97 (D.C. Cir. 2023) (holding that "reputation-plus claim" failed where employer's public report described employee's alleged misdeeds but "did not identify [employee] by name"). Because Jewell does not allege facts demonstrating that DFC, or anyone else in the government, "actually revealed [her] identity in any defamatory public statement," her reputation-plus claim fails. *Langeman*, 88 F.4th at 296; *see id.* at 296–97.

---

[5] Jewell does not press an argument that she had a property interest in her continued at-will employment, and any such claim would fail. *See Orange v. District of Columbia*, 59 F.3d 1267, 1274 (D.C. Cir. 1995).

The second theory, known as "stigma," "arises from the combination of 'an adverse employment action and a stigma or other disability arising from official action.'" *Graham*, 2002 WL 32511002, at *4 (citation modified) (quoting *O'Donnell*, 148 F.3d at 1140). A plaintiff must allege a "continuing harm associated with the employment action that either bars the individual (formally) from future government employment or that precludes him (formally or informally) from such a broad range of opportunities that it interferes with his constitutional right to pursue his chosen career." *Id.* (citing *Kartseva v. Dep't of State,* 37 F.3d 1524, 1528 (D.C. Cir. 1994)).

Jewell's stigma claim also fails. She does not allege any facts demonstrating that she is barred from future government employment. Parroting the legal standard—"The designation of [Jewell] as 'DEIA' staff . . . impairs [her] ability to follow her chosen career profession with the federal government," Compl. ¶ 26—is not sufficient, *see Trudeau*, 456 F.3d at 193. And Jewell neither alleges facts demonstrating that her "ability to pursue her chosen profession [outside of government] has been seriously affected, if not destroyed," *O'Donnell*, 148 F.3d at 1141–42 (citation modified), nor satisfies the Circuit's "require[ment] that there be some statement of an attempt to obtain subsequent employment and a rejection for the job resulting from the alleged stigma," *Langeman*, 88 F.4th at 297. Accordingly, the Court will dismiss Count III for failure to state a claim.

    **D.**    **Fifth Amendment Equal Protection Claim (Count IV)**

Lastly, Jewell claims that her termination denied her equal protection of the laws because DFC discriminated against her political beliefs by designating her "DEIA staff" and failed to offer her the deferred resignation option that it offered to "other non-DEIA Administratively Determined DFC employees." Compl. ¶¶ 18, 29.

As the Court has observed, Jewell fails to allege facts showing discrimination based on her political beliefs, and she does not allege discrimination on account of any protected class. Accordingly, Jewell must show "(1) disparate treatment of similarly situated parties (2) on no rational basis." *Lillemoe v. USDA, Foreign Agric. Serv.*, 344 F. Supp. 3d 215, 228 (D.D.C. 2018) (quoting *3883 Connecticut LLC v. District of Columbia*, 336 F.3d 1068, 1075 (D.C. Cir. 2003)).

Jewell's one-sentence allegation that after her termination she "learned that other non-DEIA Administratively Determined DFC employees were offered the Deferred Resignation Offer," Compl. ¶ 18, is too vague and unspecific to establish a similarly situated party, *see Lillemoe*, 334 F. Supp. 3d at 228 ("[C]lass-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." (citation modified)). But even if that skeletal allegation were sufficient to survive a motion to dismiss, the fact that Jewell was head of DFC's DEIA program and the President signed an executive order shutting down DEIA programs across the federal government provides a rational basis for DFC deciding to terminate Jewell without offering deferred resignation. *See id.* at 229 ("The rational basis inquiry is highly deferential to the government, and an equal protection claim fails under Rule 12(b)(6) if the complaint itself suggests a rational basis for the government action." (citation modified)). The Court will therefore dismiss Count IV for failure to state a claim.

## CONCLUSION

For the foregoing reasons, the Court grants DFC's Motion to Dismiss and dismisses the plaintiff's claims without prejudice. A separate order consistent with this decision accompanies this memorandum opinion.

*[signature: Dabney L. Friedrich]*

DABNEY L. FRIEDRICH
United States District Judge

March 11, 2026